NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JUANCHO ALCANTARA,                    :

              Petitioner,     :
                            Civil Action No. 03-3385(JWB)
         v.                     :     (Criminal No. 99-100(JWB))

UNITED STATES OF AMERICA,             :          **O P I N I O N**

              Respondent.     :

**APPEARANCES**:

      JUANCHO ALCANTARA, pro se
      # 22310-050 A/B
      FCI Elkton
      P.O. Box 10
      Lisbon, Ohio  44432

      CHRISTOPHER J. CHRISTIE
      United States Attorney
      By:  Jill S. Andersen
           Assistant United States Attorney
      Federal Building
      970 Broad Street
      Newark, New Jersey  07102
      (Attorney for Respondent)

**BISSELL**, Chief Judge

    This matter comes before the Court on a motion filed by

Petitioner Juancho Alcantara ("Petitioner or Alcantara") pursuant

to 28 U.S.C. § 2255 seeking to vacate his conviction or sentence.

Petitioner sets forth the following grounds for this motion: (1)

ineffective assistance of counsel, and (2) the sentence violates Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004).  For the reasons stated below, Petitioner's section 2255 motion is DENIED, in its entirety.

**FACTUAL & PROCEDURAL HISTORY**

The foregoing facts have been set forth by the Court of Appeals for the Third Circuit's decision in United States v. Perez, 280 F.3d 318 (3d Cir.), cert. denied 537 U.S. 859 (2002).  The Court, however, will reiterate key facts that are necessary to place Petitioner's motion in perspective.

**A.    The Indictment**

In February 1999, Alcantara participated in a drug trafficking operation where co-conspirators smuggled large quantities of crystal methamphetamine into the United States from the Philippines, where it had been manufactured, and distributed the drugs in New Jersey and New York.  Perez, 280 F.3d at 323-27.  On March 1, 1999, a federal grand jury returned a one-count indictment charging Alcantara and seven co-defendants with conspiring to distribute and to possess with intent to distribute more than one kilogram of methamphetamine, in violation of 18 U.S.C. § 841(a)(1) and § 846.  Id. at 326.  On October 20, 1999, co-defendant Lirio Del Rosario ("Del Rosario"), the head of the drug-trafficking operation, pled guilty to the indictment pursuant to a plea agreement that did not require his cooperation

with the United States Government ("the Government").  Id.  Three

other defendants - Augustin Daluro, Prajedo Almiranez and Arturo

Zoletta - pled guilty in August and October of 1999, pursuant to

cooperating plea agreements.  Id.  The remaining four defendants

- Alcantara, Linette Perez, Edmundo Batoon and Roland Abaia -

were tried jointly on the charge in the indictment.  Id.

**B.   The Trial**

Substantial evidence demonstrated, at trial, that Alcantara

distributed methamphetamine for the conspiracy, protected its

assets and dealt directly with Del Rosario.  Id. at 326-27.  Co-

defendant Daluro, for example, testified that Alcantara had

visited his home in Jersey City, New Jersey, in January 1999 to

buy drugs for Del Rosario.  Id. at 327 n.2.  In addition, co-

defendant Almiranez testified that in 1998 he observed Del

Rosario provide approximately ten to one hundred grams of

methamphetamine to the petitioner and Batoon in each of their

respective homes.  Id. at 327 n.3.  Also, Nesor Uy, an unindicted

co-conspirator, testified that in March 1999, while incarcerated

with Alcantara in a Queens detention center, Alcantara boasted to

him that he was one of Del Rosario's distributors.  Id. at 327

n.4.  Further, evidence demonstrated that Alcantara was present

in Del Rosario's apartment on February 25, 1999, the day of his

arrest, to obtain a portion of a ten-kilogram shipment of

methamphetamine that co-defendant Perez had just smuggled into

-3-

the United States from the Philippines, to distribute the drugs. See id. at 325.  Alcantara remained in Del Rosario's apartment on that day while officers observed significant drug trafficking taking place from the apartment.  Id.  When Alcantara and Del Rosario were arrested in the apartment that day, Del Rosario was in the process of dividing the shipment and allocating it to the distributors of the organization.  Id.  Moreover, the arresting officers observed one hundred gram of methamphetamine in plain view on top of the television set in Del Rosario's living room. Id.

Following the arrest, after waiving his Miranda rights, Del Rosario admitted to participating in the drug-trafficking conspiracy.  (Gov't's Answer and Mem. in Opp'n to the Pet'r's Mot. for Relief Pursuant to 28 U.S.C. § 2255 at Ex. C.)  Del Rosario informed investigators that co-defendant Perez smuggled multiple kilograms of methamphetamine from the Philippines.  (Id. at ¶¶ 3-4.)  He also admitted that he sold methamphetamine to Alcantara and others in New York.  (Id. at ¶ 6.)  Additionally, he stated that Alcantara was at his home on February 25, 1999, in order to pick up a quantity of methamphetamine from the shipment Perez had delivered.  (Id.)

Months following his post-arrest statement, Del Rosario altered his testimony with regard to Perez and informed investigators that someone else had smuggled the methamphetamine

-4-

into the United States.   Subsequently, Perez's attorney sought to have Del Rosario testify at trial on behalf of Perez.   Del Rosario was then brought to this Court for the Court to determine whether he would be willing to testify.   After discussing the matter with his attorney, Del Rosario, outside the presence of the jury, asserted his Fifth Amendment privilege against self-incrimination and refused to answer any questions.   (Gov't's Answer and Mem. in Opp'n to the Pet'r's Mot. for Relief Pursuant to 28 U.S.C. § 2255, Ex. B. at 7.4-7.33.)

Alcantara claimed at trial that he did not distribute drugs for Del Rosario and that he had non-criminal reasons for being present in Del Rosario's apartment on February 25, 1999.   (Id. at 7.90-7.104; 7.154-7.157.)   Specifically, Alcantara claimed that he arrived at Del Rosario's apartment on February 25, 1999 to pick up a gift from Del Rosario for his newborn son.   (Id. at 7.90-7.104; 7.154-7.157.)   Alcantara raised this claim again as part of his motion for a new trial and does so once more in his present petition for relief.

On November 11, 1999 the jury returned guilty verdicts against Alcantara, Perez and Batoon.   (Id., Ex. D at No. 108.)

**C.   Sentencing**

On March 21, 2000, this Court sentenced Alcantara to be imprisoned for a term of 190 months.   (Id., Ex. E, Judgment of Conviction.)   Alcantara, Perez and Batoon filed timely appeals.

-5-

(<u>Id.</u>, Exs. F, G, H, & I.)

**D.    <u>The Appeal</u>**

_____The Third Circuit affirmed the convictions and sentences of
Alcantara and his co-defendants.  <u>Perez</u>, 280 F.3d at 354.
Alcantara filed a petition for <u>certiorari</u> on June 10, 2002, which
was denied by the Supreme Court on October 7, 2002.  <u>Perez v.
United States</u>, 537 U.S. 859 (2002).

**E.    <u>Motion for a New Trial</u>**

On March 17, 2003, over three years after the verdict, and
over one year after the Third Circuit affirmed Alcantara's
conviction and <u>certiorari</u> was denied, Alcantara filed a motion
for a new trial.  (Gov't's Answer and Mem. in Opp'n to the
Pet'r's Mot. for Relief Pursuant to 28 U.S.C. § 2255 , Ex. L.)
Ultimately, this Court denied Alcantara's motion on May 15, 2003
due to its untimeliness.  (<u>Id.</u>, Ex. N.)

**F.    <u>Alcantara's Allegations</u>**

On June 16, 2003, Alcantara filed the instant, <u>pro</u> <u>se</u>,
petition to vacate, set aside or correct his sentence or, in the
alternative, for an evidentiary hearing, pursuant to 28 U.S.C. §
2255.  (<u>Id.</u>, Ex. O.)  Alcantara claims that he was denied
effective assistance of counsel because: (1) his attorney failed
to file a motion for a new trial pursuant to Federal Rule of
Criminal Procedure 33; (2) his attorney failed to instruct
Alcantara to accept the Government's plea offer rather than

proceed to trial; (3) his attorney failed to object to the jury
instruction phase of the criminal proceedings and failed to raise
the same issue on appeal; and (4) his attorney failed to file a
motion to dismiss Alcantara's indictment pursuant to 18 U.S.C. §
1361 et. seq. (Mot. To Vacate Conviction and Sentence Pursuant to
Title 28 U.S.C. § 2255 ("Petition") at 1.)  On January 20, 2004,
the Government filed an Answer and Memorandum in Opposition to
the Petitioner's motion.  Thereafter, on February 9, 2004,
Alcantara filed a Reply to the Government's Response.

**1.   Counsel's Alleged Failure to File a Motion Pursuant to
      Federal Rule of Criminal Procedure 33**

     Alcantara's first claims that his counsel was ineffective
because he failed to file a motion for a new trial pursuant to
Federal Rule of Criminal Procedure 33.  In particular, Alcantara
alleges that three months after his conviction, he received an
unsolicited affidavit from his co-defendant, Del Rosario,
exonerating him.  (Gov't's Answer and Mem. in Opp'n to the
Pet'r's Mot. for Relief Pursuant to 28 U.S.C. § 2255, Ex. P.)  In
this affidavit, Del Rosario claims that Alcantara was neither
involved in nor associated with the distribution of the drug-
trafficking operation.  (Id.) Alcantara claims that he received
this affidavit and provided it to his attorney believing that it
could be deemed newly discovered evidence and used as a basis for
filing such a motion.  Alcantara's attorney, however, did not
file a new trial motion.  As stated above, three years after the

guilty verdict was entered, Alcantara filed, <u>pro</u> <u>se</u>, a motion for a new trial based on the alleged newly discovered evidence. (<u>Id.</u>, Ex. L.)  This Court denied Alcantara' motion for a new trial for lack of jurisdiction due to the motion's untimeliness. (<u>Id.</u>, Ex. N.)  Alcantara now seeks relief based on the "substance of the affidavit he received after his trial."  (Mot. to Vacate Conviction and Sentence Pursuant to Title 28 U.S.C. § 2255, Ex. 2 at 7.)

**2.  Counsel's Alleged Failure to Advise Alcantara Against a Guilty Plea**

In addition, Alcantara alleges that his counsel was ineffective for advising him against accepting a plea agreement allegedly offered by the Government, which purportedly offered Alcantara a four-year term of imprisonment.  Alcantara claims that his counsel informed him that if convicted at trial he would face only a four-year sentence, similar to the sentence purportedly offered by the Government, and thus Alcantara should proceed to trial.  Alcantara argues that had counsel informed him that he faced over four years of imprisonment upon conviction at trial he would have pled guilty.  Alcantara now requests that this Court reduce his sentence to four years, pursuant to the purported plea agreement, or in the alternative, order a new trial.

**3.  Counsel's Alleged Failure to Object to Jury Instructions Regarding Drug Identity and Quantity**

-8-

Next, Alcantara claims that his counsel was ineffective for failing to object to the jury instruction, at trial and direct appeal, pertaining to drug identity and quantity under the standard provided by Apprendi v. New Jersey, 530 U.S. 466 (2000).

**4.    Counsel's Alleged Failure to Seek Dismissal of the Indictment**

Lastly, Alcantara asserts that his counsel failed to seek dismissal of the indictment under the Speedy Trial Act ("STA"), 18 U.S.C. § 3161 et seq., which provides defendants the right to have a matter tried within seventy days of the date in which they first appeared before a judicial officer in connection with the indictment filed against them.

**G.    Alcantara's Supplemental Petition**

Five months after filing his reply to the Government's opposition, on July 22, 2004, Alcantara filed a Supplemental Submission to his § 2255 motion, which he alleges a violation of his constitutional rights based on the Supreme Court's decision in United States v. Blakely, 542 U.S. 296 (2004).

## DISCUSSION

**I.    Standard for a §2255 Motion**

Pursuant to 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to

-9-

impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255; Brown v. United States, 75 F. Supp. 2d 345, 347-48 (D.N.J. 1999); Scibetta v. United States, 32 F. Supp. 2d 711, 713 (D.N.J. 1998).  "Relief under this provision is generally available only in exceptional circumstances to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." U.S. v. Gordon, 979 F.Supp. 337, 339 (E.D.Pa. 1997).

A § 2255 motion, however, generally "may not be employed to relitigate questions which were raised and considered on direct appeal." U.S. v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993)(quoting Barton v. U.S., 791 F.2d 265, 267 (2d Cir. 1986)). Moreover, with regard to those claims which were never raised on direct appeal, the Supreme Court's decision in U.S. v. Frady, 456 U.S. 152 (1982), reaffirmed the "cause and actual prejudice standard" which was first enunciated in Davis v. U.S., 411 U.S. 233 (1973). DeRewal, 10 F.3d at 103. Under this standard, a petitioner may only raise claims on collateral review that have not been raised on direct appeal if the defendant can show either "cause" or "actual prejudice" resulting from the errors of which he or she complains. Id. (citing Frady, 465 U.S. at 157). The standard specifically requires that "a convicted defendant

[demonstrate] both (1) 'cause' excusing his . . . procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." Id. (quoting Frady, 456 U.S. at 168)). It is well recognized, however, that a claim of ineffective assistance of counsel should be raised under Section 2255 rather than on direct appeal. DeRewal, 10 F.3d at 103-04.

The Court, for purposes of clarity and organization, will first decide Alcantara's Supplemental § 2255 claim and then address Alcantara's original § 2255 claim.

## A.  Petitioner's *Blakely* Claim

Alcantara's supplemental § 2255 petition raises a claim under Blakely v. Washington, 542 U.S. 296 (2004), which dealt with a determinative sentencing guideline scheme similar to the Federal Sentencing Guidelines. (Supplemental Submission to Pet'r's Mot. Under § 2255 (Pet'r's Supplemental Mot.") at 1-3.) The Court, however, will decide this claim based on the Supreme Court's holding in United States v. Booker, 125 S. Ct. 738 (2005), which dealt directly with the Federal Sentencing Guidelines. At the time of Alcantara's sentencing and filing of supplemental § 2255 petition, Booker, had not been decided.

In Blakely, the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 124 S. Ct.

-11-

2531, 2536 (2004) (internal citation omitted).   "Drawing upon its reasoning in Jones[1], Apprendi[2] and Blakely, the Booker majority held that mandatory enhancement of a sentence under the Guidelines, based on facts found by the court alone, violates the Sixth Amendment."  United States v. Davis, 407 F.3d 162, 163 (3d Cir. 2005).   Moreover, the Supreme Court articulated that its holding in Booker applied "to all cases on direct review."   125 S. Ct. at 769.

Alcantara's case became final on direct review when certiorari was denied on October 21, 2002.   Accordingly, Booker is inapplicable to Alcantara's case.

## B.   Petitioner's Ineffective Assistance of Counsel Claim

Alcantara asserts each of his claims under the theory of ineffective assistance of counsel.   The Sixth Amendment guarantees any defendant in a criminal case "the Assistance of Counsel for his defense."  U.S. CONST. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980).   A defendant has a Sixth Amendment right not just to counsel, but to a "'reasonably effective assistance' of counsel."  United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).

In Strickland, the Supreme Court established a two-prong

---

[1]   Jones v. United States, 526 U.S. 227 (1999).

[2]   Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).

-12-

test that a petitioner must satisfy in order to obtain post-conviction relief due to ineffective assistance of counsel. First the petitioner must demonstrate that counsel's performance fell below an objective level of reasonable professional service, as measured by prevailing professional norms. <u>Strickland</u>, 466 U.S. at 670, 688.  Second, the petitioner must show that absent counsel's deficient performance, the outcome of the trial would have been different.  <u>Id.</u>  There is a strong presumption that counsel's assistance falls within a range of what is considered reasonable.  <u>Id.</u> at 689.  The deciding court must make every effort to eliminate the distorting effects of hindsight and to consider counsel's assistance based on his perspective at that time.  <u>Id.</u>  A petitioner must affirmatively show how the actions of his attorney deprived him of a fair trial.  <u>Czere v. Butler</u>, 833 F.2d 59, 63-64 (5th Cir. 1987).  He must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  <u>Strickland</u>, 466 U.S. at 690.  The petitioner must show that counsel's errors made the trial fundamentally unfair.  <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 368-70 (1993).

**1.  <u>Alcantara's Motion for a New Trial</u>**

Generally, five requirements must be met for a defendant to obtain a new trial on newly discovered evidence:

> (a) the evidence must be in fact, newly discovered,
> i.e., discovered since the trial; (b) facts must be
> alleged from which the court may infer diligence on the

-13-

part of the movant; (c) the evidence relied on, must no
be merely cumulative or impeaching; (d) it must be
material to the issues involved; and (e) it must be
such, and of such nature, as that, on a new trial the
newly discovered evidence would probably produce an
acquittal.

United States v. Iannelli, 528 F.2d 1290, 1292 (3d Cir. 1976).  A

petitioner must satisfy all five of these elements for a district

court to grant a motion for a new trial.  See id. at 1293.  Here,

Alcantara has failed to satisfy four of the five requirements.

### i.    Del Rosario's Affidavit was Not "Newly Discovered" Evidence

"[E]vidence known but unavailable at trial does not

constitute 'newly discovered evidence' within the meaning of Rule

33."  United States v. Jasin, 280 F.3d 355, 326 (3d Cir. 2002).

In Jasin, the Third Circuit addressed whether "the previously

known, but only newly available, testimony of a codefendant who

invoked his Fifth Amendment privilege against self-incrimination

and did not testify at trial qualifies as 'newly discovered

evidence' . . . ."  Id.  Ultimately, the Third Circuit denied the

motion for a new trial, finding that such evidence was "newly

available" but not "newly discovered" as required by Rule 33.

Id. at 368-69.

Here, similar to the facts in Jasin, the "newly discovered"

evidence was in fact not newly discovered because the information

in Del Rosario's affidavit was known by Alcantara at the time of

his trial.  Del Rosario's affidavit claims that Alcantara was not

involved in Del Rosario's drug-trafficking operation.  (Gov't's

Answer and Mem. in Opp'n to the Pet'r's Mot. for Relief Pursuant

-14-

to 28 U.S.C. § 2255, Ex. P.)  The affidavit specifically states that Alcantara "had no association with the drugs" found in his apartment, and that Alcantara was only at the apartment to pick up a baby gift.  (Id.)  These alleged facts, however, were raised as part of Alcantara's trial defense and Alcantara testified to these purported facts.  (Id., Ex. B at 7.90-7.104; 7.154-7.157.)

Alcantara also argues that Del Rosario's affidavit is "newly discovered" because Del Rosario would have testified and verified the information in the affidavit at trial, but someone "advised Rosario not to tell the truth."  (Id., Ex. L.)  For a Rule 33 analysis, however, the relevant evidence is the substance of Del Rosario's affidavit and his possible testimony with regard to Alcantara's lack of culpability.  The Court reasons that the information presented by Del Rosario's affidavit does not qualify as "newly discovered;" rather, the evidence is only "newly available."

If Alcantara was not culpable, as he claims, then he must have known at the time of his arrest that Del Rosario could exculpate him.  Moreover, Del Rosario's affidavit mirrors Alcantara's defense testimony at trial.  Accordingly, the information in Del Rosario's affidavit cannot be considered "newly discovered evidence."  Thus, similar to the Third Circuit's conclusion in Jasin, testimony that was unavailable at trial because Del Rosario asserted his Fifth Amendment right against self-incrimination does not satisfy the first requirement

-15-

of the Rule 33 analysis.

### ii.  **The Evidence in Del Rosario's Affidavit was Known at Trial**

The second requirement, that the evidence could not have been discovered earlier through the exercise of the defendant's or his counsel's diligence, is not applicable in this matter.  As stated above, the purported facts in Del Rosario's affidavit were known to Alcantara at trial because they were part of his own defense.  Accordingly, any lack of diligence in obtaining these facts was not at issue.

### iii. **Del Rosario's Affidavit was Cumulative Evidence**

The Third Circuit has determined that a new trial is not warranted by newly discovered evidence of affidavits that simply corroborate or bolster a defendant's alibi defense because it is cumulative in nature.  Government of Virgin Islands v. Lima, 774 F.3d 1245, 1250 (3d Cir. 1985).  In the instant case, Alcantara testified in his own defense that he was not part of Del Rosario's drug-trafficking operation, that he had no connection with the drugs in Del Rosario's apartment and that he was only present at the apartment to pick up a baby gift.  (Gov't's Answer and Mem. in Opp'n to the Pet'r's Mot. for Relief Pursuant to 28 U.S.C. § 2255, Ex. B at 7.90-7.104; 7.154-7.157.)  The information provided in Del Rosario's affidavit and proffered by Alcantara as "new evidence" simply corroborated his testimony and thus, was cumulative.

-16-

### iv.  **Del Rosario's Affidavit was Material**

The fourth requirement, that the newly discovered evidence must be material to the issue(s) involved, is satisfied by Alcantara.  It is undisputed that Del Rosario's Affidavit was material because the content of the affidavit addressed Alcantara's trial defense and his participation in the drug-trafficking operation.  Nonetheless, a petitioner must satisfy all five requirements for a new trial.  <u>Iannelli</u>, 528 F.2d at 1293-93; <u>Jasin</u>, 280 F.3d 365.

### v.  **An Acquital based on Del Rosario's Affidavit was Unlikely**

Alcantara fails to satisfy the fifth requirement, that the newly discovered evidence would probably produce an acquittal, for several reasons.

First, the jury already evaluated and rejected the claim that Alcantara advanced in his motion for a new trial, that he was not involved in the drug-trafficking operation and was at Del Rosario's apartment to pick up a gift for his newborn son.

Second, the "newly discovered" evidence directly contradicted Del Rosario's post-arrest statement that Alcantara participated in his drug-trafficking operation and had been at his apartment to pick up drugs for distribution.  (Gov't's Answer and Mem. in Opp'n to the Pet'r's Mot. for Relief Pursuant to 28 U.S.C. § 2255, Ex. C at ¶ 6.)  In addition, a bias can be inferred in Del Rosario's Affidavit because it states that he and

Alcantara were friends who had known each other for seven years. Furthermore, Del Rosario's "new" statements were offered after Del Rosario was convicted and sentenced.[3]

Finally, evidence introduced at trial contradicts the content of Del Rosario's affidavit and thus, would have resulted in Alcantara's conviction.  For example, testimony from several witnesses, Alcantara's mobile phone records reflecting calls between Alcantara and Del Rosario prior to the date of the arrest and Alcantara's presence at Del Rosario's apartment while drug-trafficking occurred demonstrate that Alcantara was involved in Del Rosario's drug-trafficking operation.  Further, in denying Alcantara'a appeal the Third Circuit concluded, "we find no evidence that [Alcantara] was at Del Rosario's apartment for any purpose other than to engage in drug-related activities."  Perez, 280 F.3d at 338.  The Third Circuit also considered and rejected Alcantara's claim that there was insufficient evidence to sustain

---

[3]"Courts generally consider exculpatory testimony offered by codefendants after they have been sentenced to be inherently suspect."  Jasin, 280 F.3d at 365.  In Jasin, the Third Circuit acknowledged that:

> [t]he rational for casting a skeptical eye on such exculpatory testimony is manifest.  It would encourage perjury to allow a new trial once co-defendants have determined that testifying is no longer harmful to themselves.  They may say whatever they think might help their co-defendant, even to the point of pinning all the guilt on themselves, knowing they are safe from retrial.  Such testimony would be untrustworthy and should not be encouraged.

Id. (internal citation omitted).

his conviction.  Id. at 343-45.  The Third Circuit found that Alcantara: (1) knew of the plan to have Perez smuggle methamphetamine into the United States; (2) admitted to Uy that he was one of Del Rosario's distributors; and (3) before his arrest, obtained twenty grams of methamphetamine from Daluro in New Jersey for the express purpose of delivering it to Del Rosario.  Id.  Thus, given the substantial weight of evidence against Alcantara it was unlikely that he would have been acquitted if Del Rosario's affidavit and testimony were admitted in a new trial.

Based on the above analysis, the Court is unpersuaded by Alcantara's contention that his counsel's decision not to file a motion for a new trial was unreasonable and thus, his counsel's performance was deficient.  "It is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance."  United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989).  Filing a motion for a new trial based on Del Rosario's affidavit and testimony as newly discovered evidence would have proved frivolous because the evidence was known at trial, the evidence was cumulative, and acquittal remained unlikely.  As such, Alacantara's counsel's failure to file a motion for a new trial did not amount to ineffective assistance of counsel.

**2.    Alcantara's Counsel's Alleged Advise Against a Guilty Plea**

-19-

Alcantara alleges that his defense counsel advised him against submitting a guilty plea.  One form of ineffective counsel occurs when an attorney communicates a plea offer to a defendant, but purportedly provides "advise that . . . [is] so incorrect and so insufficient that it undermine[s] [the defendant's] ability to make an intelligent decision about whether to accept the offer."  United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992).  Alcantara claims that this is exactly what occurred in the present matter.

In Day, the defendant's counsel advised the defendant that he was facing a maximum sentence of eleven years under the Federal Sentencing Guidelines, but the sentencing judge imposed a sentence that exceeded twenty years after finding that the defendant was a career offender.  Id. at 40.  Apparently, the defendant had not been given notice by counsel or the court prior to trial that he would be deemed a career offender for purposes of sentencing, and therefore his enhanced sentence was a surprise.  Id. at 42.  In his section 2255 petition, the defendant asserted that the Government offered him a plea bargain with a cap of five years, but that he rejected the offer and proceeded to trial due to his belief that the maximum sentence would be eleven years.  Id. at 40, 42.  In remanding the case, following a denial by the district court of the defendant's section 2255 petition, the Third Circuit recognizing that "[k]nowledge of the comparative sentence exposure between

-20-

standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." Id.  The Third Circuit, however, did "not suggest that, to comply with the Sixth Amendment, counsel must give [a] defendant anything approaching a detailed exegesis of the myriad arguably relevant nuances of the Guidelines. . . . [Rather] a defendant has the right to make a reasonably informed decision whether to accept a plea offer." Id.

Alcantara's case, however, is distinguishable from that of the defendant in Day.  Here, Alcantara concedes that he was put on notice prior to trial of the ten-year mandatory minimum sentence that he faced if convicted.  (Gov't's Answer and Mem. in Opp'n to the Pet'r's Mot. for Relief Pursuant to 28 U.S.C. § 2255, Ex. O at 5.)  Moreover, the indictment charging Alcantara specifically alleges that the conspiracy involved over 1 kilogram of methamphetamine, which corresponded to a base offense level of at least 32, or 121-151 months for criminal history level I. (Id., Ex. A.)  Accordingly, Alcantara's ten year statutory minimum after being convicted of the offense charged in the indictment could not be considered a surprise.

In addition, assuming arguendo that Alcantara's counsel provided him with an inaccurate prediction with regard to the drug quantity that Alcantara would be held accountable for after a conviction, that does not warrant a vacating of his sentence. "A 'mere inaccurate prediction, standing alone, [does] not

-21-

constitute ineffective assistance.'" <u>United States v. Holcomb</u>, 943 F. Supp. 13, 18 (D.D.C. 1996) (internal citation omitted). Therefore, Alcantara's counsel's alleged prediction and advice were not deficient because Alcantara knew the statutory minimum and the drug type and quantity charged in the indictment and his counsel's prediction with regard to going to trial was merely a prediction not a guarantee.

### 3.   <u>Alcantara's Counsel was Not Ineffective for Failing to Object to Jury Instructions Regarding the Drug Identity and Quantity</u>

Alcantara's third claim, that his counsel was ineffective for failing to object to the jury instruction regarding drug identity and quantity under <u>Apprendi</u>, also fails because <u>Apprendi</u> was not decided until after Alcantara had been convicted.  In <u>Apprendi</u>, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increase the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490. Alcantara argues that his sentence violates <u>Apprendi</u> and should be remedied by his motion to vacate.  The Third Circuit, however, has concluded that <u>Apprendi</u> does not apply retroactively on collateral review.  <u>United States v. Swinton</u>, 333 F.3d 481, 491 (3d Cir. 2003).  Accordingly, Alcantara's counsel cannot be deemed ineffective when the rule of law Alcantara claims his counsel failed to advocate was not in effect at the time of his trial.

Alcantara also asserts that his counsel was ineffective for not raising an <u>Apprendi</u> error on direct appeal. Alcantara, however, fails to state that an <u>Apprendi</u> error was raised on direct appeal. Although he raised the issue <u>pro se</u> and not through his counsel, the <u>Apprendi</u> claim was addressed by the Third Circuit. The Third Circuit found "no error, let alone plan error, under <u>Apprendi</u>[,]" thus Alcantara's counsel cannot be deemed ineffective for failing to raise <u>Apprendi</u> challenges on direct appeal.

**4.   <u>Failing to Seek Dismissal of the Indictment</u>**

Alcantara's fourth claim asserts that his attorney was ineffective for faling to seek a dismissal of the indictment under the STA. Specifically, Alcantara posits that he was arraigned on March 15, 1999 and should have been brought to trial on May 26, 1999 rather than October 26, 1999. There were, however, justifiable periods of delay that were excludable from the STA seventy day calculation and allowed for the trial to commence on October 26, 1999. The STA exempts from the seventy day period during which trial must commence all "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of such motion." 18 U.S.C. § 3161(h)(1)(F). In addition, the STA excludes all delay resulting from a continuance granted by the district court "on the base of [the court's] findings that the ends of justice served by [the continuance] outweigh the best

-23-

interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A).

Here, Alcantara's co-defendant filed an omnibus pretrial motion on April 21, 1999.  Gov't's Answer and Mem. in Opp'n to the Pet'r's Mot. for Relief Pursuant to 28 U.S.C. § 2255, Ex. D at No. 36.)  On that date, the first period of exclusion began and thirty-five days remained on the STA period.  Motions regarding suppression of evidence were set for hearing on August 18, 1999, which the court conducted on that date and took the suppression motions under advisement.  Id. at No. 61.  On September 10, 1999, the Court issued a letter opinion denying all of the suppression motions.  Id. at No. 66.  The period of time from the filing of the motions on April 21, 1999, through the disposition of the motions on September 10, 1999, was properly excluded from the STA calculation.  See 18 U.S.C. § 3161(h)(1)(F).  This Court then issued a continuance order in the interests of justice on October 15, 1999, excluding from STA computation the period between June 22, 1999 and October 26, 1999, pursuant to 18 U.S.C. § 3161(h)(8)(A).  This order was given a retroactive application and entered by the Court before the initial seventy day STA period had expired.  Hence, the only time that had run on the STA seventy day period between Alcantara's arraignment and the date of trial was the initial thirty-five days between arraignment and filing of the pretrial motion.  As such, Alcantara' counsel was not ineffective or

-24-

deficient in failing to present a motion to dismiss Alcantara's indictment when his right to a "speedy trial" was not violated.

### CONCLUSION

For the reasons set-forth above, the grounds asserted by Petitioner in support of his motion for relief under 28 U.S.C. § 2255, whether considered individually, collectively or in any combination, fail to demonstrate that he is entitled to have his sentence or conviction set aside.  His motion is DENIED, in its entirety.


/s/    John W. Bissell
         JOHN W. BISSELL
            Chief Judge
     United States District Court


DATED:  August 30, 2005